AZZARO v. STUPAR

1. CONSTITUTIONAL LAW—EQUAL PROTECTION—AUTOMOBILE ACCIDENT
   —CIVIL ACTION—DRIVING RECORD OF DEFENDANT—EVIDENCE.
   A statute which prohibits introduction into evidence in a civil
   action resulting from an automobile accident of defendant's
   previous driving record does not deny equal protection of the
   laws to plaintiffs in such actions; the fact that a statute works
   a hardship on certain people does not automatically mean that
   it violates the Fourteenth Amendment of the United States
   Constitution.

2. APPEAL AND ERROR—CONSTITUTIONAL LAW—STATUTES.
   The constitutionality of a statute will not be considered for the
   first time on appeal.

3. AUTOMOBILES—NEGLIGENCE—CIVIL ACTION—TRIAL—JURY—EXAM-
   INATION OF PROSPECTIVE JURORS—INSURANCE.
   Refusal of trial court to inquire of prospective jurors in an au-
   tomobile negligence action concerning the identity of their
   automobile insurance companies and to exclude all prospective
   jurors who had the same insurer as defendant *held,* proper
   because such an examination would improperly inject into the
   case the fact that an invisible defendant stood behind the
   visible defendant in a financial way.

4. TRIAL—JURY—VOIR DIRE EXAMINATION—TRIAL COURT—DISCRE-
   TION.
   The latitude of *voir dire* interrogations is largely a matter of
   discretion with the trial court.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 160.
[2] 4 Am Jur, Appeal and Error §§ 13, 14.
[3] 31 Am Jur, Jury §§ 108–110.
[4] 31 Am Jur, Jury § 138.
[5] 29 Am Jur, Evidence § 644.
[6] 31 Am Jur, Jury §§ 242–244.

5. AUTOMOBILES — NEGLIGENCE — TRIAL — EVIDENCE — STATEMENT
TO POLICE OFFICER.

Trial court's allowing of a police officer to testify concerning
the contents of a statement given to him by plaintiff seven
days after an accident while plaintiff was in a hospital in
traction and under medication was proper where the plaintiff
was conscious and alert, and was aware of the purpose of the
interview.

6. TRIAL—JURY—QUALIFICATIONS—OATH OF ALLEGIANCE.

It is not necessary that the oath of allegiance required of pro-
spective jurors be in writing in order to be valid, and the
validity of the jury in question cannot be attacked where there
was evidence that the judicial oath was given to them orally,
*en masse.*

Appeal from Wayne, Charles Kaufman, J. Sub-
mitted Division 1 March 4, 1969, at Detroit. (Docket
No. 4,716.) Decided April 23, 1969.

Complaint by Leon Azzaro against Louis Stupar
for damages resulting from plaintiff being struck by
defendant's automobile. Verdict and judgment for
defendant. Plaintiff appeals. Affirmed.

*McWilliams & McWilliams,* for plaintiff.

*Rouse, Selby, Webber, Dickinson & Shaw* (*Millard
Becker, Jr.,* of counsel), for defendant.

BEFORE: LESINSKI, C. J., and FITZGERALD and V.
J. BRENNAN, JJ.

FITZGERALD, J. The facts claimed by the parties
in this automobile-pedestrian accident case are ir-
reconcilably in conflict. The action arises out of an
accident which occurred on December 31, 1964, near
the intersection of Argyle and Ford roads in the
city of Dearborn when plaintiff, on foot, was struck
by the defendant's automobile as he attempted to

cross the street. The facts, however, bifurcated as they may be, are not the basis of this appeal. Rather, plaintiff appeals from the verdict for defendant on constitutional and procedural grounds and these will be considered *in seriatim*.

Plaintiff first contends that section 731 of the vehicle code, CLS 1961, § 257.731 (Stat Ann 1968 Rev § 9.2431), is unconstitutional as offensive to the Fourteenth Amendment guaranteeing due process and equal protection. This, because plaintiff was unable under this statute to test the credibility of the defendant by introducing evidence of his traffic convictions. He states that it creates one standard of justice for automobile negligence cases and another for all other civil and criminal cases. He also argues that § 731 offends GCR 1963, 607, which permits cross-examination as to credibility, the court having forbidden the use of defendant's certified driving record. The argument is without merit, based as it is upon *Sullivan* v. *Graham* (1953), 336 Mich 65. *Sullivan* held that a statute providing for the licensing of residential builders but exempting from these provisions trustees, banks, and trust companies unjustly discriminated in favor of these groups. The statute was held to violate the due process and equal protection clauses of the Federal Constitution. The statute under present consideration discriminates in like manner against persons in the class of parties involved in accidents with motorists. It does not discriminate specifically against pedestrians, plaintiffs, motorists, or defendants. The fact that it works a hardship on the plaintiff does not violate the due process clause of the Constitution. *Wayne County Bank* v. *Wolverine Box Company* (1930), 250 Mich 273. The question was further not properly preserved for review. Generally, the constitutionality of a statute will not be

first considered on appeal. *Brookdale Cemetery Association* v. *Lewis* (1955), 342 Mich 14.

Nine potential jurors were American Automobile Association (Detroit Automobile Inter-Insurance Exchange) members, as was defendant. Plaintiff now contends that it was error for the court not to exclude them from the jury panel, citing articles in the AAA magazine allegedly in favor of motorists over pedestrians. Plaintiff exercised 5 peremptory challenges and the jury was sworn in with 4 AAA members still on the jury.

The issue as raised by the plaintiff is without merit. *Darr* v. *Buckley* (1959), 355 Mich 392, is the controlling case. The issue in that case was:

"Should the trial judge have questioned prospective jurors to determine whether they were fellow members of defendant in a reciprocal inter-insurance exchange and automobile club?"

The Court held:

"It is evident, by and large, that counsel was and now is intent on an open court injection into the case, by means of *voir dire* examination, of the fact or impression that an invisible defendant stands back of the visible defendant in a financial way."

This appears to be the motive of the plaintiff in the present case. The Court in *Darr, supra,* held in regard to CLS 1956, § 500.3030 (Stat Ann 1957 Rev § 24.13030):

"So, and as long as statute and court rules pertinently remain unamended, we should as as a matter of enforcement of our own rules uphold circuit judges when they apply the statute and suppress *voir dire* jury examination in violation thereof."

The trial judge in the present case correctly suppressed *voir dire* examination. The latitude of *voir*

*dire* interrogations is largely a matter of judicial discretion. Failure to ask the questions suggested by the plaintiff is not reversible error. *Kuisel* v. *Farrar* (1967), 6 Mich App 560.

Seven days after the accident while plaintiff was restrained in his bed in the hospital in traction, an officer of the Dearborn police department interviewed him. From the interview, the police officer typed out a statement which he was permitted to read at trial. Plaintiff now contends that an accident victim in a hospital must be advised of his constitutional rights before a police officer can interview him and use his statement in courtroom testimony. This issue is essentially without merit. Plaintiff cites *Lebel* v. *Swincicki* (1958), 354 Mich 427, which held that evidence obtained in violation of plaintiff's constitutional rights is not admissible in any civil or criminal action. We can, however, readily distinguish the *Lebel Case.* In that case the defendant was unconscious and knew nothing about the taking of a blood sample and at no time gave his consent. In the instant case, the plaintiff was conscious and alert. From the testimony, it is clear that plaintiff was aware of the fact he was being interviewed and we can devine no possibility as to how plaintiff could have incriminated himself as there was never a criminal action pending as a result of the accident.

Finally, plaintiff contends that some jurors didn't sign the oath of allegiance on their jury questionnaire and were thus not properly qualified to serve as jurors. There is evidence to indicate that on October 2, 1967, the jurors on this panel were given the judicial oath orally, *en masse.* Nowhere is it alleged that the oath of allegiance must be signed by jurors in order to be valid. It is not an issue in this case as to whether or not the oath was neces-

sary, but rather whether it was given. From the record, we are satisfied that the jurors were properly qualified.

Affirmed. Costs to appellee.

All concurred.